Good morning, Mr. Carrillo. Good morning, Your Honors. May it please the Court. This case, the issue is whether some monies owed by a subcontractor, by the contractor, belong to the estate of the subcontractor who filed for bankruptcy under Section 541 of the Bankruptcy Code. The facts are simple. Walsh had a contract with the Federal Government, with the VA Administration, and in order to pour concrete and do some other things, they subcontracted Insite. In December of 2011, Insite filed for bankruptcy and the contract was requested to be assumed to the Bankruptcy Court and it was approved in March of 2012. In the meanwhile, Insite continued to work and continued to submit requests for payment to Walsh Corporation and they didn't pay. And later on, they ended the work because they simply ran out of cash. The contention of Walsh in their summary judgment was that that money that was owed, it was earned progress payments, were not part of the estate and that was the legal grounds on which the Bankruptcy Court determined that they were not and thus the rest of the causes of action were dismissed as well. We requested an appeal to the BACPA. Walsh decided that they wanted, on their election, to go before the District Court and the appeal was heard by the District Court by Judge Bezosa and Judge Bezosa confirmed the decision of the Bankruptcy Court and here we are. Our contention is that the jurisprudence that they are quoting in both the summary judgment request as well as in the judgment both from the Bankruptcy Court and the District Court is that the factual situation is different because the cases that are cited, they refer to situations in which either a surety subrogated in the place of the subcontractor or the contractor and there was another difference as well, which was that the surety or the owner of the project completed the whole project and at the end, the amounts retained were less than the amount expended by the surety or the contractor and we think that it is inappropriate to do that because the language of Section 541 is supposed to be as ample as possible to provide the estate with enough funds to pay creditors. And particularly the case that seems to be the cornerstone of the argument is the case of Massa. At the time of the filing of the bankruptcy, are the amounts in issue were they owed at that point? Amounts owed to whom, sir? To Insight. From our perspective, it's clear because there were three or at least one pre-petition work that was done that earned income to Insight. And at the time of the filing, the invoice for that particular period of time, which was from November to December of 2011, it had not been billed to Walsh Corporation. Walsh had paid everything that had been billed up until November. So at that time, there was a certification for about $170,000 that was submitted at the beginning of the year in January for work performed prior to the petition of the bankruptcy. And that seems to have caused some problem with the district court as well because Judge Vesalza, in his opinion, pretty much is telling there is a confusion as to that. We believe that he simply thought that, you know, these things happen on a particular date every month and they simply don't. The certification that was submitted to Walsh at the beginning of January was for work that had been performed from the 23rd of November up until the 26th of December. But at the time of the filing, it had not been submitted to Walsh for payment yet. Am I correct that Walsh takes a position that there were no outstanding payments due at the time of the filing of the petition? That's their position, yes. That's their position. Yes. Okay, thank you. Okay. And as to the other causes of action that are being presented in the adversary proceeding, we state that Walsh is saying that it was Insight that did not comply with the terms of the agreement. We argue that it's simply the opposite. Insight was performing the work and it continued to do it after the filing of the bankruptcy up until March when it ran out of money. When you filed your motion to assume the subcontract after the bankruptcy, you stated or you admitted, according to Walsh, that you had failed to make the contractually mandated payment to subcontractors and suppliers. Am I correct? Yes. And that's what leads Walsh to claim that you were in violation of Article 8.1 of the subcontract, and that therefore it foreclosed your right to claim those funds. That is where we have a disagreement because, first of all, we don't think that that is an essential part of the contract that under the Puerto Rico Code will cause that kind of call for default, if you would. The essential part for Insight is to perform the work, and the essential part of the contract for Walsh would be to pay for the work that was done. Obviously, the suppliers and subcontractors would have to be paid. And they, in fact, have been paid since because the surety has stepped in and has paid for that. What we're saying is that had Walsh paid for the work that was performed, and we differentiate that from the determination in MASA and the other cases, those were retentions that were made in accordance with the contract. In other words, rather than being money available to the estate, they were subject to the conditions stated in the contract because they were going to be paid only after everything had been settled with the subcontractors. What we're talking about here is exclusively earned progress payments that were simply due to Insight, excuse me, for the work that had been performed already. Had that money been paid, that had been the agreement done with the bank. I'm sorry. The relationship between what you're saying and this admission. If you admitted that the contract required you to pay the buyers and the suppliers. Yes, and the point. You admitted that you hadn't. There were monies owed at the moment of the filing. Yes, that is the admission that we're doing. In other words, the subcontractors had submitted their request for payment, and they had not been satisfied yet. Our position is that were that be the case, it would be pretty much a default continuously because at that precise time of the filing, in fact, there were monies owed, but that doesn't mean that they were not going to be paid. Isn't the lawsuit under the contract as soon as they're paid, they'll pay it? That is what they are saying. What we're saying is that there is time differential because it doesn't mean that you get paid today and you're going to get the submission from the subcontractors on that very same day. In other words. When am I supposed to look to figure out who's right on this point? Well, if there were, for instance, a default or Insight had simply said we're not going to pay, then that would have caused or triggered that particular clause under the contract. The text of it doesn't seem to require you to avow that you'll never pay. It just seems to say that if you haven't paid, Walz doesn't have to pay. And that is the part in which we disagree. The contract obviously was something that was done pursuant to Walz's request. It was really an adhesion contract, if you would. And in that respect, we think that it would be unfair to apply it so verbally because it would simply mean that Walz would have the key to terminate the contract without having provided an opportunity to cure that default. It wouldn't be able to terminate it. It just wouldn't be obliged to pay until there was payment by you guys. And, again, within the contract of the construction, you know, the work is performed and the subcontractors do perform it. And I don't read that clause to be something that would require that insight before they submit their application that, you know, they have paid the monies owed to the particular subcontractor. So you're not bringing a claim just under the contract. You're bringing a claim under the code, right? Under the? Bankruptcy code. Yes, that the monies belong to the bankruptcy estate. Yes, sir. What happens? Let's say you have competing views of what this clause of the contract means. And we're in bankruptcy. Yes, sir. What is your understanding of what a court is supposed to do? Just ignore that you're in bankruptcy and treat it as if it's just a contract case and decide under Puerto Rico law what the contract says? Just the opposite. You know, the moment that they file for bankruptcy and their monies owed pre-petition to the subcontractors. But you see that, I don't know, it just seems to assume the answer. There's this dispute. The other side is taking the view that just reading the contract they don't owe anything. That is right. And, you know. So now we're in bankruptcy and there's a dispute between two parties about what this contract means. And what we're saying is that the monies were owed because it was earned progress payments that should have been paid. And even conceding that point, if you'll allow me, that what we're saying is there would be only a claim for the amount owed to the subcontractors. Not for the whole amount that was owed. In other words, we can see the point under the contract that Walsh says you owe your subcontractors $50,000. But the amount that was supposed to be paid to Insight was in excess of $150,000. But they're not denying that they have to eventually pay you it as soon as you pay all the buyers in the lane. They did. You know, there was a communication as part of the record when Insight, pursuant to the assumption of the executive contract, requested Walsh to make the payment for the certifications that had been done both pre-petition and post-petition. And they came back saying it's just the opposite. You owe us money and we're not going to pay. That's, you know, what caused the filing of the adversary proceeding. Thank you. Judge Leibniz? Yeah, just one question. It was very important to the bankruptcy court and the district court that there was an admission that your client had failed, as I understand it, to meet its contractual obligation to pay laborers and material. Isn't that an undisputed fact in this record that your client failed to meet that contractual obligation? I submit that it is not. And that was one of the things that was, in our perspective, misinterpreted by the district court. What we're saying is that at that point, the moment of the filing of the bankruptcy, when the testimony was given, that particular one that is being referred to by Walsh, it is in a moment in which, yes, the submissions that had been done by Insight to get payment from Walsh had been satisfied. But at that particular point, there were still monies owed to the subcontractors. So you're saying that to the extent that your client had not met its obligations to subcontractors and material, it is only because Walsh had not met its payment obligations to your client? Is that your position? Yes. Had the monies been paid, they would have been satisfied. Insight, at all times, wanted to pay the subcontractors. There is no denying that. And even there was an assurance by the surety company when the assumption of the contract was approved by the court. It was based upon a stipulation, whereas the bank that was opposing the executive contract and the surety company and Insight, everybody came on board and they said even if Insight were not going to pay, the surety would still be covering that. So the noncompliance would be something that was not considered at all times. At the Deliverance of District Court, maybe it's a bankruptcy court, as a further indication of your client's failure to fulfill themselves, that even after the bankruptcy court allows your client to assume the contract, apparently believing that your client will then meet its obligations to assume to that contract, yet again it failed to make any payments to the laborers and material men. Is that an unfair view of how your client performed after the assumption of the contract? I think it would be unfair precisely because the stipulation that was submitted, you know, made clear that Insight would make the payments as soon as it would receive the money owed from Walsh. The cash situation of the corporation, which is precisely the point that drives it to the bankruptcy, it was very dire at that point and they really needed the money to come from Walsh in order to pay for those subcontractors. I'm sorry, Judge Blackman, are you finished? I'm fine, yes, thank you. The following is contained in paragraph eight of the uncontested facts which were admitted. Accordingly, as of December 30, 2011, according to Insight's own payment applications, Insight had been fully paid for all final payment applications which Insight had submitted to Walsh. That is, as of the date of the filing of the bankruptcy, there were no pending, which is the first question that I referred to, there were no pending payments. Thus, there were no outstanding payments due to Insight as of the filing of the applications. When the motion to assume the subcontract with Walsh was filed, then you also admitted that it had failed to make contractually mandated payments to its subcontractors. And that's why Article 8.1 comes into play. And therefore, does that vary your answer? No, but if I may be allowed to clarify, as of December 31, there were work performed by Insight for Walsh that was done between the end of November and the 26th of December. That particular amount of money had not been asked for payment. It had not been certified. It was certified at the beginning of January, and then it was submitted to Walsh for payment. It was never done. So what was said in that particular statement that you read was that as of December 31, everything that had been asked for or certified to Walsh had been paid, and there's no contention as to that. It is for the monies for work done during December, and then after the petition in January and February that there is a problem. So just so I understand, you're saying that the admission was a factual admission that a payment had not yet been made. It was not a concession that you were in breach. Exactly. Yeah. And so since you hadn't conceded it was in breach, all your admission did was just state the obvious, which is ultimately we are mandated to make this payment. Yes. We have not yet made it. Correct. And you reserved on the question implicitly as to whether you had a mandate to make that payment at that time. Your position was you didn't have a mandate to make the payment at that time. Correct. Because you understood that you were only obliged to pay once Walsh paid, and then of what Walsh paid you, you'd pay it out. During the bankruptcy, yes. After the filing, that was exactly the way they should have been done. So what do you want to have? That's your interpretation of the contract. Yes. They have a different interpretation of the contract. They do. We're in bankruptcy. There's an automatic stay in place. There comes the crux of the question. So what's supposed to happen in that situation when there's a dispute about what the contract means and there's an automatic stay in place? I guess I would come to the Court of Appeals. The issue is that we consider that money to be part of the estate, and Walsh says, no, it is not, because of MASA, because of Segovia, and the rest of the other cases. And that is where we want to make a distinction, because in those particular cases, as I stated before, it is first determination rather than – But those cases don't have this exact language in the contract. They do not. So the question is just what does this contract contemplate? Those cases can't answer that question, can they? There comes the point of when is that contract enforceable against Insight. Our contention is that once it was filed, a bankruptcy, Walsh could not enforce it against – But they're not enforcing it. The moment that they do not pay, they are enforcing it. Well, they're not. That just assumes that they were obliged to pay. Well, there was work done. Their view is that until the material men and suppliers are paid, there's no obligation to pay. That's their position. So since that's their position, how are they enforcing the contract? They're just not – Not paying. You have no right to the money under the contract. That's what I'm saying. So we have to resolve that question, don't we? What does the contract require between the two? And I'm just not sure in bankruptcy how we're supposed to do that. What's your suggestion? Our suggestion is that the monies be considered as part of the estate. And the issue – That means we have to rule for you as to the meaning of the contract and against them. Yes, it would. Yes, Your Honor. And, again, it has to be taken in the context of the bankruptcy. It's something that happens every day that a contractor or subcontractor comes into bankruptcy court precisely to get the opportunity to reorganize. If we were to forego that, it simply would be a matter of liquidating every corporation that comes into court, into bankruptcy court, rather than allowing the opportunity to pay. Remember, it is not that it was not going to be paid, because even after the potential non-payment at the end of the contract, then the surety would have to step in, and Walsh interest would have been covered all the time all along. Mr. Leibniz, do you have any questions? Nothing further. Thank you, counsel. Thank you. Mr. Leibniz, good morning. Afternoon, Your Honor. Good afternoon, Your Honor. May it please the Court, Paul Leibniz for Walsh Construction, Puerto Rico. The issue that was being talked about within Brother Counsel's argument about whether any amounts were due and owing to insight at the time they filed for bankruptcy, I think we've looked back at the record and now conclusively determined that, in fact, Walsh owed Insight no monies at the time they filed. As you will recall, before Insight filed bankruptcy on December 30th, Walsh had also declared Insight in default that morning for failure to pay subs. And that's, I think, where counsel may be speaking about, when he speaks about pay applications that haven't even been submitted yet at the time that Walsh declared Insight in default, I think it kind of confuses the record because what we're talking about is subs that hadn't been paid  These are past due obligations. These aren't obligations for monies hoped to be gained by Insight down the road. So when they file for bankruptcy and eventually get the contract assumed, subject to the stipulation that they make good on the arrears that the court points out, the bankruptcy court, at that point in time, the clock started ticking, the 72-hour notice under 8.1, when Insight declared them in default. And, you know, admittedly, things got put on hold due to the stay. Once the contract got assumed and the balance of the 72 hours expired, they had an obligation to cure that default before any monies came due and owing. And at the time, they did not. And they were put on notice that not only did they not cure the default, but in the March, I believe, ninth letter to Insight from Walsh, they made clear that at that time, based upon Walsh's supplementation of the workforces and its projection of amounts not paid by Insight, that Insight was actually $180,000 rough-odd dollars in arrears beyond any pay applications that had been submitted after they went into bankruptcy. So for monies not due yet. So Walsh, obviously, the court recognized that it exercised its rights, both under the contract and under the doctrine of recoupment, to not pay Insight, but to proceed to prosecute the work. And not necessarily relevant, much to the detriment of Walsh, in that it had to expend considerable funds for Insight and Insight's failure, I'm sorry, and Insight's surety's failure to step in and remedy the situation. They had an opportunity. They had a window after they got the assumption of the contract, either by Insight directly to pay the subs. You know, there's a list in the record of all the depositions we took of subs and suppliers who this, you know, both the code and the contract are supposed to protect from this happening, not being paid. Again, all relating to obligations that accrued prior to them filing for bankruptcy. Then at the time that the contract was assumed, the surety for Insight surely had the means and methods to satisfy these defaults and get the project back going using Insight as the contractor. The fact that Insight didn't have the funds is no surprise to anybody. If you look at the circumstances in which the court considered the question of whether we could, whether the contract could be assumed and proceed, that was part of it, that they had a surety that was going to step in. Can I just make sure I understand what the facts are as you're representing them? It was a set of work done by Insight for Walsh, all of which Walsh paid for. Right. There's a set of work to be done by Insight for Walsh, none of which has been paid for. As to the work that Insight did for Walsh that Walsh already paid, some of the suppliers and material men for that work were never paid. Correct. Is there also a set of work that Insight did for Walsh that Walsh has not yet paid? There is no money due under any pay application. But I understand your question. Yes, there's pay applications that post-date bankruptcy that relate to work that, absent them being in default of their contractual obligations, and absent the doctrine of recruitment and the rulings of the court, had they done everything they were supposed to do, had they cured it, they would have been paid. And just to be clear, that batch of money, how big a sum is that? So we have the amounts that Walsh paid twice because, remember, they issued checks that were supposed to be cosigned. So Walsh paid for certain subcontractors. I know you're looking for a precise number. This is going to get me confused. But the amount of work Insight has already performed for Walsh, for which Walsh has not yet paid, perhaps rightfully, is work that would equate to how much Walsh owing. Well, it was billed but not paid, putting aside that it was subject to recruitment. I believe the claim is around $457,000. So that's $457,000 of work that Insight's already done for Walsh. And your position as to why that need not be paid under the contract is not that the suppliers and material men for that amount of work haven't been paid. It's that suppliers and material men for work for which Walsh already paid hasn't been paid. Correct. Okay. I now understand what's going on. Your position is under the contract you're entitled when you find out that you paid them for work they did and they didn't fulfill their obligation to pay the suppliers and material men, you're entitled at that point to withhold all payment even for work that you got the benefit of. Because we had to supplement their forces. We're on a VA project that's a hospital, right? It's a rehabilitation. Well, under the contract in these circumstances, Walsh has the ability under the subcontract to also keep prosecuting the work and make sure that things get moving to mitigate damages essentially. But your theory is that until they pay, I mean, just so I get. Yeah. Suppose there's a $50 outstanding bill to material men and suppliers on that earlier work. Your position would be you could hold them to do the full scale of all the work going forward and never pay them for any of that future work until that $10, $50 arrearage is paid? If there was an accounting sent to Insight on March 9th that provided them with the breakdown of the $180,000 that went in excess of the $450,000. So that wasn't actually what was going on. They were already overextended beyond. Walsh could have turned around and paid that $457,000, and it would have exasperated the situation by $600,000 more or $700,000 more. It would have been the $180,000 plus the $457,000. What they were saying was if you look at the exhibits, they were saying as of March 9th that, listen, listen, this is how far behind you are because a bunch of other subs came along and a bunch of other work needed to be supplemented. But just so I know, is your position that in consequence of the arrearages for the past work for which you paid them and their failure to pay the suppliers and the material men, if you weren't going to pay them going forward, were they free not to do the going forward work? Or was your position that they have to continue doing the going forward work? We have an executory contract that was in place, right? So their rights are defined by the contract. And we had a right at that point to not pay them until they cured the arrears. And we had a right to do it against progress payments, retainage. We had a right to do it both under the contract and under the doctrine of recoupment. Would they be in breach during that period of nonpayment if they didn't continue to do the work? They would under the contract. And that's what we're dealing with. It's a very clear contract from Walsh's perspective. Mr. Snipers, do you have any questions? Yeah, I guess I do. I guess I share some of Judge Brown's confusion and concern. What I don't understand is the Insight goes into bankruptcy because they have insufficient funds to meet assorted obligations. There is a suggestion in the argument that I'm hearing from Insight's counsel that even though they are now in bankruptcy, because they have insufficient funds to meet assorted obligations, that in order to meet its contractual obligations to Walsh, it continued to perform by asking material men and laborers with whom they have a relationship to continue to do work on the VA project. And then having asked them to do that work, they then submit additional requests for payment to Walsh in order to meet those obligations. Is that what happened? Even though they're in bankruptcy, they are continuing to perform by asking laborers and material men to do more work, so they're incurring more obligations which they expect they can meet by getting progress payments from Walsh. Is that what they're doing? They say they submitted, I think post-bankruptcy, they submitted applications for payments from Walsh to meet those obligations. Is that what happened? There were some pay applications that were submitted, yes, Your Honor, after the bankruptcy filing. But then I get to Walsh's position, well, okay, that work was done, but we're not going to give that money to you because you've demonstrated that you're not a reliable subcontractor. You've already demonstrated that you do not pay the material men and laborers. If that money is owed to those workers and material men, we're going to pay that directly. Is that basically Walsh's position? We owe that money, but not to you. We owe it directly to the people who did the work. Indeed, it was paid, Your Honor. Right, okay. So if it has been paid, how can the money has been paid for expenses that inside incurred, how can they be saying you now owe that money to us when it's already been paid out to the laborers and material men? I just don't get that. I guess you don't either. I don't, Your Honor, and I appreciate you shedding some clarity on it better than I. Okay. All right, thank you. Anything else, Your Honors? Just to confirm that last point, so the record's going to show that all the money in-site seeking that they're calling progress payment, all of the material men and suppliers with that work have already been paid by Walsh? Walsh has satisfied the obligations because, as you can imagine, there would be an obligation running to Walsh of its subcontractor by the subs. Is there? It all came to Walsh. Essentially, when I stand here, I don't want to say we all, and there might be an exception to somebody who didn't come. There are some contractors, subs to Insight, that may have sat on their rights or otherwise didn't do it. I don't know. I only know what's in the record as far as that goes, but certainly in the instances where Walsh had an independent obligation that would have fell upon Insight. I don't fully understand. There's got to be an increment that Insight adds over and above the cost of paying off the material men and the suppliers. Otherwise, Insight wouldn't – I mean, they'd be bankrupt because they are bankrupt. But presumably, they think that they are entitled to some money from Walsh over and above the expenses that they have to pay the suppliers and material men. In a perfect project, when you have a subcontractor who is utilizing subs and suppliers, subs, subs, and suppliers, they'll step on the cost one. They'll get five and five on top of the cost two of that work to be performed, whether it's for oversight or just contractual savviness. That's not an unusual occurrence in the construction industry. But in this case, it was less about that. I mean, like I tried to point out earlier, the amounts that Walsh had expended and the liabilities were at 180 above these amounts in these contract balances. There's no allegation and nothing is in the record that suggests what Insight is seeking to recover is just that incremental portion? Certainly not. And what's your position with respect to your obligation to pay that incremental portion? It falls back on the defenses we have that any payments do at all, and we believe it is not. Thank you. Thank you, Your Honors.